*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JIMMIE YOUNG,

        Defendant-Appellant.

UNPUBLISHED
May 25, 2023

No. 359570
Wayne Circuit Court
LC No. 18-004460-01-FC

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his *nolo contendere* plea convictions of manslaughter and possession of a firearm during the commission of a felony (felony-firearm). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the fatal shooting of Angela Foster at approximately 2:00 a.m. on May 5, 2018, in Highland Park, Michigan. Early that morning, defendant shot Foster after, as defendant claimed, the two got into an argument and Foster attacked defendant with a piece of metal. Defendant claimed he tried to fire a warning shot but hit Foster. Defendant put Foster into his car and drove her to Henry Ford Hospital. A short time later, Foster died from a single gunshot wound. Defendant was subsequently interviewed by Detective Brian Menge, who read defendant his *Miranda*[2] rights from a form. Defendant signed the form and placed his initials next to each right. During the interview, defendant admitted to getting into an argument with and shooting Foster.

In the trial court, defendant moved to suppress his statements made to police on the basis that the statements were not voluntary as a result of intoxication and denial of the right to an attorney. The trial

---

[1] *People v Young*, unpublished order of the Court of Appeals, entered January 26, 2022 (Docket No. 359570).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

court denied the motion. Defendant then retained new counsel for the apparent purpose of filing an interlocutory appeal, but no appeal was filed.

Before trial began, defendant decided to accept the prosecutor's offer to plead no contest to the charges in exchange for a 3-to-15-year sentence for the manslaughter conviction and a consecutive two-year sentence for the felony-firearm conviction. At the sentencing hearing, defendant moved to withdraw his plea on the basis of a lack of evidence and innocence, and the trial court denied the motion without explanation. Defendant was sentenced according to the plea agreement. This appeal followed.

## II. SUPPRESSION OF THE EVIDENCE

### A. STANDARDS OF REVIEW

This Court reviews a trial court's ultimate decision on a motion to suppress evidence de novo. *People v Elliot*, 494 Mich 292, 300-301; 833 NW2d 284 (2013). The trial court's factual findings are reviewed for clear error. *Id*. at 300. Factual findings are clearly erroneous when the reviewing court is left with a "definite and firm conviction that the trial court made a mistake." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) (quotation marks and citation omitted). "On appeal from a ruling on a motion to suppress evidence of a confession, deference must be given to the trial court's findings." *People v Kowalski*, 230 Mich App 464, 471; 584 NW2d 613 (1998). "A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion, which occurs when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks omitted).

### B. ANALYSIS

Defendant argues that the trial court abused its discretion when it denied his motion to suppress the evidence of the statements he made to police during a custodial interrogation. We disagree.

The United States and Michigan Constitutions both guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1 § 17. In *Miranda v Arizona*, 384 US 436, 467-469; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that during a custodial interrogation, a suspect must be "informed in clear and unequivocal terms" that he has the right to remain silent and any statements made may be used against him in court. A suspect also has the constitutional right to counsel during a custodial interrogation. *People v Tanner*, 496 Mich 199, 207; 853 NW2d 653 (2014). The right to counsel is imperative to protect the suspect's right against self-incrimination. *Miranda*, 384 US at 469. "Once a suspect invokes his right to remain silent or requests counsel, police questioning must cease unless the suspect affirmatively reinitiates contact." *Tanner*, 496 Mich at 208.

"A suspect's waiver of his *Miranda* rights must be made voluntarily, knowingly, and intelligently." *Id*. at 209 (quotation marks and citation omitted omitted). To be voluntary, the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id*. (quotation marks and citation omitted). Whether a statement was made voluntarily is considered under the totality of the circumstances. *Id*. In *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988), the Michigan Supreme Court set forth the factors a court should consider when determining whether a statement given to police was voluntary.

In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*.]

A waiver is knowing and intelligent when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986). The consequences to be understood relate to the admissibility of a defendant's statements in court proceedings, "and the test is not whether it was wise or smart to admit his culpability." *People v Tierney*, 266 Mich App 687, 710; 703 NW2d 204 (2005). When deciding whether to waive the Fifth Amendment right to silence, "a defendant need only know of his available options and make a rational decision, not necessarily the best decision." *Id*.

"When reviewing a trial court's determination of the voluntariness of inculpatory statements, this Court must examine the entire record and make an independent determination, but will not disturb the trial court's factual findings absent clear error." *People v Shipley*, 256 Mich App 367, 372-373; 662 NW2d 856 (2003). "The burden is on the state to prove by a preponderance of the evidence that the suspect properly waived his rights." *People v Cheatham*, 453 Mich 1, 27; 551 NW2d 355 (1996). "To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *Id*. at 29. The United States Supreme Court has acknowledged that "giving the [*Miranda*] warnings and getting a waiver generally produces a virtual ticket of admissibility." *Missouri v Seibert*, 542 US 600, 608-609; 124 S Ct 2601; 159 L Ed 2d 643 (2004).

Defendant argues that his waiver of his *Miranda* rights was not made voluntarily, knowingly, and intelligently because he was intoxicated, could not read the form, and was never asked if he understood his rights. The trial court noted that Detective Menge read defendant each of his *Miranda* rights and that defendant initialed and signed the waiver form. Similarly, defendant never asked questions about his rights or said that he could not read the waiver form. There is no evidence that defendant was subjected to physical coercion. However, defendant was intoxicated during the interview. Indeed, defendant admitted to having four or five drinks the previous day, at least five hours before the interrogation took place. The trial court found, however, that defendant's intoxication was outweighed by other factors showing defendant made a voluntary waiver of his rights. In sum, the trial court's overall finding that defendant made a knowing waiver of his *Miranda* rights was not clearly erroneous.

Defendant also argues that his statements made to police must be suppressed because he invoked his right to counsel. A defendant's invocation of the right to counsel must be "unequivocal." *Tierney*, 266 Mich App at 711. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v United States*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994). In *Davis*, the United States

Supreme Court held that the statement, "[m]aybe I should talk to a lawyer," was not an invocation of the right to counsel. *Id*. at 462. This is because such a statement only indicates the likelihood that the suspect might later invoke his right. *Id*. at 459. Similarly, in *Tierney*, this Court held that the statements "[m]aybe I should talk to an attorney" and "I might want to talk to an attorney" were not an unambiguous invocation of the right to counsel. *Tierney*, 266 Mich App at 711.

This Court has also held that when a reference to obtaining an attorney is made in the future tense, there is no indication that a suspect is presently invoking his right to counsel. *People v Granderson*, 212 Mich App 673, 677; 538 NW2d 471 (1995). In *Granderson*, when asked if he wished to have an attorney paid for by the state, the defendant responded, "Yeah, I'm—I'm [going to] need that 'cause I can't afford none." *Id*. at 676. This Court concluded that such a statement indicated the defendant would later need counsel, rather than he was presently invoking his right to counsel. *Id*. at 677.

It is apparent that defendant only made an equivocal reference to invoking his right to have an attorney present. Detective Menge was beginning to ask defendant about the events leading up to the shooting, and he asked defendant whether he was angry at the time. Defendant said:

I don't know what was going on. Nah, nah.

> But, you know, I ain't trying to be funny. I know—you know we get to talkin' about stuff like that, I could get jammed up. Or . . . whatever. So you know I—I would definitely have to, uh . . . you know, speak with a lawyer, whatever. But . . . .

Detective Menge then reminded defendant that he was entitled to talk to a lawyer, which was why he was advised of his rights. Detective Menge began questioning defendant again, and defendant answered the questions without further discussion of his right to counsel. Rather than asking for a lawyer immediately, defendant indicated that if that they began talking about the shooting, then he would need to speak to a lawyer. That was not a present invocation of the right to counsel. Like in *Granderson*, the statement was made regarding the future need for an attorney, which does not qualify as a request for counsel. *Granderson*, 212 Mich App at 677. Accordingly, detectives were not required to cease their questioning of defendant. *Id*.

But even if defendant's statements to police were made involuntarily, defendant does not have an available remedy. The failure to provide sufficient *Miranda* warnings is not itself a violation of a defendant's constitutional rights. *United States v Patane*, 542 US 630, 641; 124 S Ct 2620; 159 L Ed 2d 667 (2004). A defendant's constitutional rights are not violated until his incriminating statements are used against him during trial, and the remedy for a *Miranda* violation is to exclude the unwarned statements from being used as evidence at trial. *Id*. at 641-642. Defendant waived this remedy when he waived his right to a trial by pleading no-contest. *People v Cook*, 323 Mich App 435, 446-447; 918 NW2d 536 (2018) ("[A] criminal defendant may appeal from an unconditional guilty plea or a plea of nolo contendere only where the claim on appeal implicates the very authority of the state to bring the defendant to trial, that is, where the right of the government to prosecute the defendant is challenged, but [w]here the claim sought to be appealed involves only the capacity of the state to prove defendant's factual guilt, it is waived by a plea of guilty or nolo contendere.") (quotation marks and citation omitted; second alteration in original).

After a guilty or no-contest plea, a defendant may only challenge by right whether the state had jurisdiction to prosecute him. *Id*. "[A] defendant, after pleading guilty, may raise on appeal only those

defenses and rights which would preclude the state from obtaining a valid conviction against the defendant." *Id*. at 445. "[W]here the defense or right asserted by defendant relates solely to the capacity of the state to prove defendant's factual guilt, it is subsumed by defendant's guilty plea." *People v New*, 427 Mich 482, 491; 398 NW2d 358 (1986). A defendant, following a guilty or no-contest plea, may only challenge the trial court's decision to suppress evidence if he has entered into a conditional plea agreement that reserves the defendant's right to bring such a challenge. *Cook*, 323 Mich App at 444.

As will be discussed below in greater detail, defendant knowingly waived his trial rights and did not enter a conditional plea allowing him to challenge the trial court's evidentiary ruling. Accordingly, even if defendant's *Miranda* waiver was involuntary and his invocation of the right to counsel was unequivocal—two propositions we reject—defendant does not have a remedy because the fruit of those purported violations was never used against defendant at trial. The trial court did not err, therefore, when it denied defendant's motion to suppress.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. STANDARDS OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, and questions of law are reviewed de novo. *Id*. A factual finding is clearly erroneous only when we are left with a "definite and firm conviction that the trial court made a mistake." *Wiley*, 324 Mich App at 165 (quotation marks and citation omitted). Because no *Ginther*[3] hearing was held in the trial court, this Court's review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

#### B. ANALYSIS

Defendant contends that his trial counsel rendered ineffective assistance by failing to file an interlocutory appeal from the trial court's order denying his motion to suppress his statements. We disagree.

To show ineffective assistance of counsel, a defendant must establish: "(1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). Effective assistance of counsel is presumed, and a defendant bears a "heavy burden" to prove his counsel was ineffective. *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

To demonstrate prejudice in a claim related to a plea agreement, the defendant must show that, but for counsel's error, the outcome of the plea process would have been different. *Douglas*, 496 Mich at 592. An attorney's conduct does not fall below an objective standard of reasonableness if this Court can conceive of a "legitimate strategic reason" for the attorney's decision. *People v Clark*, 330 Mich App

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

392, 427; 948 NW2d 604 (2019). A defendant must also establish the factual predicate of his claim. *Putnam*, 309 Mich App at 248.

Defendant contends that an interlocutory appeal would have been successful on the basis of the available evidence. This, defendant argues, establishes that his trial counsel's failure to file an appeal, which would have been successful, fell below an objective standard of reasonableness. Defendant argues that he was prejudiced because, absent the evidence of his statement to police, the outcome of the plea process would have been different because defendant would not have accepted the plea offer.

Defendant has not shown that his trial counsel's performance fellow below objective standards of reasonableness. Defendant has not pointed to any authority supporting the proposition that a trial attorney's performance is ineffective when he or she does not file an interlocutory appeal of a trial court's ruling, even when a defendant insists upon the interlocutory appeal. There were legitimate strategic reasons for defendant's attorney to forgo an interlocutory appeal. Defendant maintained his innocence and also asserted that he acted in self-defense. If trial counsel believed that defendant could be acquitted under such a theory, an interlocutory appeal would have needlessly prolonged defendant's detention. Moreover, and as will be explained below in more detail, there was sufficient evidence, absent defendant's statements, to convict defendant of manslaughter.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defendant's trial counsel may have considered defendant's statements to be inconsequential or potentially even helpful to establish self-defense or a lack of malice. Or it may have seemed like the better option to rely on the video as evidence of defendant's state of mind rather than have defendant testify at trial. It is not our role to second guess trial counsel on these matters.

Generally, when a defendant enters a guilty or no-contest plea, he waives his right to challenge the factual basis of his conviction through an appeal by right unless he enters into a conditional plea agreement that reserves the right to challenge an evidentiary ruling. *Cook*, 323 Mich App at 444, 446-447. Although defendant wanted his attorney to file an interlocutory appeal, defendant did not insist on reserving his right to appeal the denial of his motion to suppress his statements through the conclusion of the trial court proceedings. There is no evidence that defendant was incorrectly advised by his trial counsel that he would be able to appeal the order denying his motion to suppress the evidence of his statements to police if he pleaded no-contest. Nor does the record contain any evidence that defendant wished to condition his plea on his ability to appeal the trial court's ruling on his motion to suppress, let alone that the prosecution would have agreed to such a condition.

Defendant also argues that his trial counsel was ineffective by failing to advocate for defendant's motion to withdraw his no-contest plea at the sentencing hearing. Generally, an "attorney must serve as an advocate for the individual's preferred position." MCR 5.732(B). It is true that defendant's attorney did not make an argument in support of defendant's motion to withdraw his no-contest plea. However, as will be demonstrated, the trial court correctly denied defendant's motion to withdraw his guilty plea, and trial counsel cannot give ineffective assistance by failing to make a fruitless motion. See *Clark*, 330 Mich App at 426 (defense counsel is not ineffective for failing to make a meritless motion).

Defendant has failed to show that his trial counsel's performance fell below an objective standard of reasonableness by failing to file an interlocutory appeal or by failing to advocate for defendant's motion to withdraw his plea. Therefore, we need not address whether defendant was prejudiced by his counsel's performance.

## IV. MOTION TO WITHDRAW PLEA

### A. STANDARDS OF REVIEW

We review a trial court's decision on a motion to withdraw a plea for an abuse of discretion. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). The proper interpretation of the court rules is an issue we review de novo. *Blanton*, 317 Mich App at 117.

### B. ANALYSIS

Defendant argues that the trial court abused its discretion when it denied his motion to withdraw his no-contest plea. We disagree.

A no-contest plea "is an admission of all the essential elements of a charged offense and, thus, is tantamount to an admission of guilt for the purposes of the criminal case." *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). A trial court "may not accept a plea of guilty or *nolo contendere* unless it is convinced that the plea is understanding, voluntary, and accurate." *People v Cole*, 491 Mich 325, 330-331; 817 NW2d 497 (2012). Under the court rules, once the trial court has accepted a plea, there is no absolute right for the defendant to withdraw his plea. *Blanton*, 317 Mich App at 117, citing MCR 6.310.

Under MCR 6.310(A), "[t]he defendant has a right to withdraw any plea until the court accepts it on the record." Thereafter, "a plea may be withdrawn on the defendant's motion or with the defendant's consent, only in the interest of justice, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea." MCR 6.310(B)(1). To show that withdrawal of a plea is in the interest of justice, the defendant bears the burden of establishing "a fair and just reason for withdrawal of the plea." *Patmore*, 264 Mich App at 149 (quotation marks and citation omitted). "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge." *People v Fonville*, 291 Mich App 363, 378; 804 NW2d 878 (2011). Only once that burden has been met does the prosecution have the "burden of showing that substantial prejudice would result from allowing withdrawal of the plea." *Patmore*, 264 Mich App at 150.

"When reviewing whether the factual basis for a plea was adequate, this Court considers whether the fact-finder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding." *Fonville*, 291 Mich App at 377. There is a factual basis for a plea when the defendant's admissions lead to an "inculpatory inference." *Id*. An inculpatory inference may still be drawn from what a defendant says even when the defendant denies an element of the crime. *Id*.

Defendant argues it is in the interest of justice to allow him to withdraw his no-contest plea because he has a valid claim of actual innocence. Even excluding the facts elicited during his custodial interrogation, the testimony at the preliminary examination and the facts to which defendant stipulated at

his plea hearing provide a factual basis for defendant's conviction of manslaughter. A defendant is guilty of manslaughter when he commits an unlawful act "with the intent to injure or in a grossly negligent manner that proximately causes death." *People v Datema*, 448 Mich 585, 606; 533 NW2d 272 (1995). A witness told officers that she heard defendant and Foster arguing in front of their home and then heard a gunshot. There was blood in defendant's driveway. The witness could see that Foster was bleeding and heard defendant say, "She's bleeding." Defendant never called 911, but instead he put Foster in his vehicle and drove her to Henry Ford Hospital, where she died of a gunshot wound. These facts support an inculpatory inference demonstrating defendant's guilt. See *Fonville*, 291 Mich App at 377. Although there was no witness to the shooting other than defendant, the evidence that defendant and Foster were witnessed arguing, there was a gunshot a short time later, and Foster died of a gunshot wound supports the inference that defendant committed the illegal act of shooting Foster, which led to her death, supporting a manslaughter conviction.

Defendant has not brought forth any evidence or challenged the existing evidence in a way that would undermine the factual basis of his plea or suggest he is actually innocent of the charges against him. Rather, it appears that defendant, after availing himself of the prosecution's plea offer, changed his mind about whether taking the offer was in his best interests. When a "defendant simply changed his mind between the date of his plea and the date for sentencing . . . [that is] not a valid basis for withdrawing his plea." *People v Everard*, 225 Mich App 455, 461; 571 NW2d 536 (1997).

The trial court did not abuse its discretion when it denied defendant's motion to withdraw his plea. We therefore affirm the order denying defendant's motion.

## V. VOLUNTARINESS OF PLEA

### A. STANDARDS OF REVIEW

We review a trial court's decision on a motion to withdraw a plea for an abuse of discretion. *Blanton*, 317 Mich App at 117. "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *Young*, 276 Mich App at 448.

### B. ANALYSIS

In his final argument, defendant argues that his no-contest plea was entered involuntarily because he was not able to participate in his defense and because of judicial bias. We disagree.

"A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *Cole*, 491 Mich at 332. "For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing." *Id*. at 332-333. "The voluntariness requirement mandates that a defendant entering a plea be fully aware of the direct consequences of the plea." *People v Brown*, 492 Mich 684, 694 n 35; 822 NW2d 208 (2012) (quotation marks and citation omitted).

The most obvious direct consequence of a plea is the penalty to be imposed, and the trial court must advise a defendant of the maximum possible sentence and any mandatory minimum sentence. *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017). To ensure a plea is knowingly, voluntarily, and intelligently made, the trial court "must place the defendant or defendants under oath and

personally carry out subrules (B)-(E)." MCR 6.302(A). In order to ensure a plea agreement is voluntarily entered into, under MCR 6.302(C)(4), a trial court must ask the defendant: (1) (if there is no plea agreement) whether anyone has promised the defendant anything, or (if there is a plea agreement) whether anyone has promised anything beyond what is in the plea agreement; (2) whether anyone has threatened the defendant; and (3) whether it is the defendant's own choice to plead guilty.

Defendant contends that his pretrial detention prevented him from participating in his defense, and the trial court was biased against him, leaving him with no choice but to involuntarily accept the prosecution's plea offer. A criminal defendant has the state and federal constitutional right to present a defense. *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008). As part of that right, a "defendant also has a constitutional right to consult with counsel and prepare a defense." *People v Hieu Van Hong*, 328 Mich App 45, 59; 935 NW2d 396 (2019). However, the right to present a defense "is not unlimited and is subject to reasonable restrictions." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). When a defendant contends his defense has been prejudiced by a lengthy incarceration, he generally has to offer specific proof of such prejudice. *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006).

In this regard, defendant first asserts that there was an unreasonable delay between his arrest and his arraignment on the charges against him. MCL 764.26 provides:

> Every person charged with a felony shall, without unnecessary delay after his arrest, be taken before a magistrate or other judicial officer and, after being informed as to his rights, shall be given an opportunity publicly to make any statement and answer any questions regarding the charge that he may desire to answer.

"[T]he Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *Co of Riverside v McLaughlin*, 500 US 44, 47; 111 S Ct 1661; 114 L Ed 2d 49 (1991). Following a warrantless arrest, a defendant must be brought before a magistrate for a probable-cause determination within 48 hours of the arrest in order for any delay to be presumptively reasonable under the Fourteenth Amendment. *Id*. at 56. If more than 48 hours passes between the warrantless arrest and a probable-cause determination, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id*. at 57.

Defendant was arrested on May 5, 2018. Defendant was arraigned three days later on May 8, 2018. Defendant is correct that his attorney was not present for the arraignment.[4] When defendant brought to the court's attention that he had an attorney, the court explained that defendant's attorney contacted the court, stated that she would not be able to make the arraignment, and requested that defendant be referred to pretrial services. At the conclusion of the arraignment, the district court set defendant's bond at $500,000, with a requirement for GPS monitoring, and referred the case to pretrial services. The record does not demonstrate that the one-day delay in defendant's arraignment, at which the court granted defense

---

[4] An arraignment on a warrant is ordinarily not a critical stage of the proceedings that requires the representation by counsel. *People v Green*, 260 Mich App 392, 399-400; 677 NW2d 363 (2004), overruled on other grounds by *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006).

counsel's request to refer defendant to pretrial services, impaired defendant's right to participate in his defense.

Defendant also argues that he was not able to participate in his defense because he could not afford to post bond. "With certain exceptions, a criminal defendant in Michigan is entitled as a matter of constitutional right to have reasonable bail established for pretrial release." *People v Davis*, 337 Mich App 67, 74; 972 NW2d 304 (2021). When a defendant is charged with murder, the court has the discretion to either set bond or deny bond if the trial court makes a finding "that the proof of the defendant's guilt is evident or the presumption of the defendant's guilt is great." *Id*. at 77.

The district court judge exercised its discretion and set bond. The trial court reduced defendant's bond twice, to $250,000 the first time and to $100,000 the second time. Defendant has pointed to no authority suggesting that bond must be set at an amount a defendant has the ability to post. What is ultimately fatal to this argument is that defendant has not shown how his pretrial detention prejudiced him by hindering his defense to the charges against him. Defendant has only asserted that the delay preceding his arraignment and inability to post bond led him to believe he could not receive a fair trial. Accordingly, defendant has not carried his burden of offering specific proof of prejudice. *Williams*, 475 Mich at 264.

Defendant next contends he involuntarily entered into the plea agreement because he believed the trial court judge was biased against him on the basis of an alleged friendship with his trial counsel. A criminal defendant has the right to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). Succeeding on a claim of judicial bias requires a defendant to overcome "a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). "Absent actual personal bias or prejudice against either a party or the party's attorney, a judge will not be disqualified." *Wells*, 238 Mich App at 391.

There is no evidence that perceived bias on the part of the trial court judge led defendant to involuntarily plead no-contest. In defendant's postsentencing motion to withdraw his plea, which he filed *in propria persona*, defendant asserted that he would have found new counsel if he knew his attorney did not file an interlocutory appeal because of an alleged friendship between the attorney and the trial court judge. Defendant also suggested that his lack of an awareness of a friendship between his attorney and the judge contributed to his entry of an unknowing plea. This argument is contradicted by defendant's arguments in the trial court that he was unaware of the alleged bias until after the proceedings.[5] Defendant has not provided any examples of the trial court judge's words or actions that displayed bias. This argument lacks merit.

At his plea hearing, defendant knowingly and voluntarily waived his constitutional rights "against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *Cole*, 491 Mich at 332. At the outset of the hearing, the trial court explained the minimum and maximum

---

[5] In his brief on appeal, defendant also contends that he raised a conflict of interest on the basis of an improper friendship at his plea hearing. This contention is similarly contradicted by the record because defendant only argued a conflict of interest on the basis of his opinion that the trial court judge was not following the rule of law.

sentences to which defendant was agreeing, and defendant said he understood. Defendant then expressed reservations about entering into the plea agreement on the basis of his attorney's failure to file an interlocutory appeal and his belief that the trial court was not following established precedent in its rulings. However, defendant ultimately stated he was satisfied with his counsel's representation. The trial court asked defendant each question required by MCR 6.302(A), and, after each question, defendant stated he understood the rights he was giving up and that he was doing so willingly. After accepting the factual basis of defendant's plea, the trial court asked defendant one more time whether he had been threatened or forced into entering his plea, and defendant said that he had not. Defendant waived his rights knowingly and voluntarily when he pleaded no contest to the charges and is not entitled to relief.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly